CHARLES R. JONES, Judge.
 

 | )The Appellant, Robert Hart, Jr., appeals his conviction and sentence for home invasion. Finding that the district court erred in part, we remand this matter for imposition of the mandatory fine as required by La. R.S. 14:62.8. We affirm the conviction of Hart, but we vacate the multiple bill adjudication and sentence, and we remand for Hart, to be sentenced as a first offender. We deny the motion to supplement by the State.
 

 The State filed a bill of information charging Hart with home invasion, to which he entered a not guilty plea. The district court subsequently found probable cause. Following a jury trial, Hart was found guilty as charged. The defense filed motions for post-verdict judgment of acquittal and for a new trial that were denied by the district court.
 

 Subsequently, we denied the
 
 pro se
 
 writ application of Hart seeking a ruling on his motions for new trial and for post-verdict judgment of acquittal.
 
 [1]
 
 He was later adjudicated a fourth felony offender. The district court imposed a twenty-year sentence at hard labor without benefit of parole on his conviction for home invasion before the Court then sentenced him as a fourth felony offender to serve life imprisonment at hard labor without benefit of parole. |2 Hart’s motion to reconsider sentence was denied, and his motion for appeal was granted. Hart’s
 
 pro se
 
 motion to quash the multiple bill of information was denied. This timely appeal followed.
 

 Ronald Forbes testified that he owns the home in Orleans Parish where the invasion was alleged to have occurred. The home was gutted at the time of the incident from the damage it sustained during Hurricane Katrina. Despite being gutted, Mr. Forbes testified that he was living there
 
 *28
 
 because the home had running water and electricity. The victim, Shannon Doucet, was staying with him.
 

 Mr. Forbes testified that at approximately 9:00 a.m., Hart came to the home asking to talk to Ms. Doucet. Mr. Forbes testified that he told Hart that she was not there even though she was asleep in Mr. Forbes’ bedroom. Mr. Forbes testified that later that day he left the house for a half-hour, and he locked the front door when he left. He testified that when he returned, Hart was in the home and was coming from his (Forbes’) bedroom. He further testified that Hart passed him on his way out the door and Ms. Doucet came out of the bedroom crying. Mr. Forbes testified that he noticed that cereal had been thrown on the floor; that the window unit had been pushed into the house, and that a board had also been removed from the window. Mr. Forbes testified that he chased after Hart, but he was unable to catch him. Lastly, Mr. Forbes testified that he did not give Hart permission to be in his home. He also identified Hart in court.
 

 Portions of the 911 call made by Ms. Doucet were played for the jury. The tape was first authenticated by a New Orleans Police Department Officer who was the custodian of the 911 tape.
 

 | «Officer Brittany Marigny and her partner responded to the dispatch of a simple battery at the home of Mr. Forbes. She testified that once there, she met with Ms. Doucet, who had a contusion on the left side of her forehead that was bruised and swollen. Off. Marigny identified photographs of the victim’s injuries, which were published to the jury. The Officer testified that she saw the inside of the residence from the front door and that she determined that the point of entry was a side window that was once boarded. She further testified that a board was on the ground near the window, and the window was open.
 

 Portions of a phone call that Hart received in prison were played for the jury. The parties stipulated that it was Hart’s voice on the tape recording of the phone call.
 
 [2]
 

 A review for patent errors reveals that the bill of information is missing from the record. In
 
 State v. Mitchell,
 
 553 So.2d 915 (La.App. 4 Cir.1989), we found that a record lacking a bill of information was harmless error, where, as in the instant case, the defendant made no complaint that he was unable to properly defend himself, and the docket master indicated that the bill of information had been filed.
 

 In this case, although the bill of information is not included in the record, the minute entry of arraignment shows that Hart waived a formal reading of the bill of information. Additionally, the trial transcript reveals that at the beginning of trial, the trial judge read the bill of information to the jury in Hart’s presence. There is no indication that defendant was unaware of the charges against him, and he has not alleged any prejudice. Therefore, the error is deemed harmless.
 

 RThe record also reflects an error patent as to Hart’s sentence. Louisiana R.S. 14:62.8
 
 [3]
 
 requires imposition of a fine
 
 *29
 
 of not more than $5000. This court has determined that the failure to impose a mandatory fine requires that the matter be remanded for the imposition of that fine.
 
 State v. Williams,
 
 2003-0302, pp. 3-4 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, 753. Therefore, we remand this matter for the imposition of the mandatory fine.
 

 No other errors patent were found.
 

 By his first assignment of error, Hart argues that his right to confront the witnesses against him was violated when the district court permitted the 911 call made by Ms. Doucet to be played to the jury when Ms. Doucet did not testify at trial.
 

 The Confrontation Clause of the Sixth Amendment to the U.S. Constitution bars “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.”
 
 Crawford v. Washington,
 
 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). In
 
 Davis v. Washington,
 
 547 U.S. 813, 822, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006), the U.S. Supreme Court declared that “[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation Lis to enable police assistance to meet an ongoing emergency.” Conversely, statements are “testimonial when the circumstances objectively indicate there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions.”
 
 Id.,
 
 547 U.S at 822, 126 S.Ct. at 2273-4.
 

 The Court in
 
 Davis
 
 acknowledged that “a conversation which begins ... to determine the need for emergency assistance ... [can] evolve into testimonial statements, ...”
 
 Id.,
 
 547 U.S at 828, 126 S.Ct. at 2278. In
 
 Davis,
 
 the Court used this test to hold that statements made to a 911 operator were non-testimonial because they constituted a call for help during an ongoing threat by a caller, and the questions asked were for information necessary to resolve the present emergency. The victim was being beaten at the time the call was made. After Davis left the premises, which the victim told the operator he had done, the 911 operator then gathered more information from the victim. The Court reasoned that the statements made by a battered wife — who initially claimed that she was fine and nothing had happened, to an officer responding to a domestic disturbance call — were testimonial because “there was no emergency in progress.”
 
 Id.,
 
 547 U.S. at 829, 126 S.Ct. at 2278. The officer did not hear any arguments or things breaking, and there was
 
 *30
 
 no immediate threat to the victim.
 
 Id.,
 
 547 U.S. at 830, 126 S.Ct. at 2278.
 

 Even assuming that the portions of the 911 recording played to the jury in the instant case were inadmissible, confrontation errors, including
 
 Crawford
 
 violations, are subject to a
 
 Chapman v. State of California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless error analysis. The proper standard of review is as follows:
 

 | (¡The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt.... Factors to be considered by the reviewing court include “the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.”
 

 State v. Wille,
 
 559 So.2d 1321, 1332 (La.1990).
 

 Though Hart urges that the error was not harmless because he was convicted based solely upon the inadmissible hearsay contained in the 911 call, the State produced other evidence inculpating Hart.
 

 The evidence presented at trial established that Hart broke into Mr. Forbes’ home through a side window, pushing the window unit inside the home. He was inside the house without permission. Mr. Forbes observed Hart exit the bedroom followed by Ms. Doucet, who was crying. Officer Marigny met with Ms. Doucet and observed a contusion to Ms. Doucet’s forehead, and photographs of the injury were published to the jury. Also, Hart apparently confessed to hitting Ms. Doucet in the phone call he received in prison. Thus, it appears the error, if any, was harmless, as the playing of the redacted portion of the 911 recording did not contribute to the guilty verdict.
 

 To convict Hart of home invasion pursuant to La. R.S.14:62.8, the State had to show that he entered a dwelling owned by another without permission, that the dwelling was used in whole or in part as a home, that a person was present when he made the unauthorized entry, and that he had the intent to use force or violence upon the person or to vandalize, deface or damage the property. Here, the 17admission of the 911 tape, even if erroneous, did not contribute to the verdict. This assignment of error is without merit.
 

 Furthermore, we note that Hart has opposed the State’s motion seeking to supplement the record on appeal with a copy of the 911 recording that it located in its own file, arguing as to its authenticity. Also, the trial transcript reflects that only a redacted portion of the recording was allowed into evidence. In its brief, the State refers to what it represents is the redacted portion of the recording that was played for the jury;
 
 [4]
 
 however, because
 
 *31
 
 the veracity of the State’s representation has not been shown, we deny the motion to supplement the record.
 

 In his second assignment of error, Hart asserts that the evidence is insufficient to prove beyond a reasonable doubt that he was the person convicted of armed robbery in 1983 as alleged in the multiple bill.
 

 To prove that a defendant is a multiple offender, the State must establish by competent evidence that there is a prior felony and that the defendant is the same person who was convicted of the prior felony.
 
 State v. Chaney,
 
 423 So.2d 1092, 1103 (La.1982). Where the prior conviction resulted from a plea of guilty, the State must show that the defendant was advised of his constitutional rights and that | she knowingly waived those rights prior to his plea of guilty, as required by
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
 

 Hart specifically urges that there were no fingerprints on the bill of information or arrest register from his 1983 conviction for armed robbery. Instead, the State used the multiple bill of information and arrest register from S-3, his 1996 convictions, as evidence of his identity as the person previously convicted in 1983 of armed robbery. Counsel argued that the proof was insufficient to prove Hart’s identity as the same person previously convicted in 1983, thereby preserving the issue for review.
 

 In the multiple bill of information filed against Hart, the State averred that in addition to having been convicted of home invasion on April 29, 2010, he had three prior convictions. The predicate convictions listed in the multiple bill were a 1983 guilty plea to armed robbery (case # 295-415), 1996 convictions for attempted simple burglary and unauthorized entry of an inhabited dwelling (case # 383-513), and a 2005 guilty plea to simple burglary (case # 454-439).
 

 Again, it should be noted that the supporting documentation concerning Hart’s prior conviction for armed robbery is not included in the appeal record, nor was it found in the property room of the criminal district court. Despite this, the State argues that the evidence is sufficient, noting that the multiple bill filed in case number 383-513, S-3, listed Hart’s 1983 conviction for armed robbery. The fingerprints from the multiple bill of information were then compared by the expert to the fingerprints on the bill of information from the case herein, and to the fingerprint card of Hart’s prints taken by the expert, who found all of the fingerprints to have come from the same person.
 

 | nVarious methods are available to prove that the defendant is the same person convicted of the prior felony offense, including testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record.
 
 State v. Henry,
 
 96-1280, p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326. However, here, the exhibits to which the State refers are not part of the record, and defense counsel adamantly opposed the State’s proof of Hart’s identity as the person previously convicted of armed robbery in 1983.
 

 In
 
 State v. Santee,
 
 2002-0693 (La.App. 4 Cir. 12/4/02), 834 So.2d 533, we held that the defendant was denied a meaningful appeal from his multiple offender adjudication because the exhibits introduced at the
 
 *32
 
 hearing were unavailable. The record before the court in
 
 Santee
 
 showed that defense counsel “focused on the fact that one of the arrest registers was missing, and part of the identification could not be matched by fingerprints ...”
 
 Santee,
 
 p. 5, 834 So.2d at 536. Without the exhibits, this court could not review the specific issue preserved for review and assigned as error; therefore, the court vacated the multiple offender adjudication and sentence and remanded for a new hearing.
 
 Santee,
 
 p. 6, 834 So.2d at 536.
 

 As in
 
 Santee,
 
 the certified copies of the prior convictions are not available in the matter
 
 sub judice,
 
 and counsel herein focused on the insufficiency of the State’s proof of Hart’s identity as to the 1983 conviction. Thus, finding that this assignment of error has merit, we vacate the adjudication and sentence of Hart under the multiple offender statute.
 
 See also State v. McGhee,
 
 96-1656 (La.App. 4 Cir. 3/24/99), 739 So.2d 222, where this court vacated the defendant’s multiple offender adjudication and sentence because the exhibits were not available for review.
 

 ImLastly, Hart asserts that the district court failed to inform him of the time limitations to file for post-conviction relief. Though the minute entry of sentencing reflects that he was provided with this information, the transcript does not reflect that he was informed of the limitations.
 

 In
 
 State ex rel. Glover v. State,
 
 93-2330 (La.9/5/95), 660 So.2d 1189, the Louisiana Supreme Court held that La.C.Cr.P. art. 930.8(C), which requires the district court to inform the defendant of the limitation period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. As decided in
 
 State v. McDonald,
 
 2002-2347 (La.App. 4 Cir. 2/19/03), 841 So.2d 38, this court favors notifying a defendant of his rights under La.C.Cr.P. art. 930.8, when the district court failed to do so, by advising the defendant of such right in its written appellate opinion. Therefore, in the interest of judicial economy, we hereby advise Hart that La.C.Cr.P. art. 930.8 generally requires that applications for post-conviction relief be filed within two years of the finality of a conviction.
 

 DECREE
 

 For the foregoing reasons, the conviction of Robert Hart, Jr., is affirmed. However, this matter is remanded for imposition of the mandatory fine required by La. R.S. 14:62.8. Additionally, the multiple bill adjudication and sentence is vacated, and we remand for Hart to be sentenced as a first offender. Lastly, the motion to supplement the record of the State is denied.
 

 AFFIRMED IN PART; VACATED IN PART AND REMANDED IN PART; MOTION TO SUPPLEMENT RECORD DENIED
 

 [1]
 

 . 2010-K-0823.
 

 [2]
 

 . The tape is not part of the record before this court. However, the State indicated during its closing argument without objection that Hart admitted that he "went in the house and slapped the [expletive] out of her, and I went up there and I [expletive] her up a little bit.”
 

 [3]
 

 . La. R.S. 14:62.8 provides:
 

 A. Home invasion is the unauthorized entering of any inhabited dwelling, or other structure belonging to another and used in whole or in part as a home or place of abode by a person, where a person is present, with the
 
 *29
 
 intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another.
 

 B. (1) Except as provided in Paragraph (2) of this Subsection, whoever commits the crime of home invasion shall be fined not more than five thousand dollars and shall be imprisoned at hard labor for not less than five nor more than twenty years; at least five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
 

 (2) Whoever commits the crime of home invasion when, at the time of the unauthorized entering, there is present in the dwelling or structure any person who is under the age of twelve years, is sixty-five years of age or older, or who has a developmental disability as defined in R.S. 28:451.2, shall be fined not more than ten thousand dollars and shall be imprisoned at hard labor for not less than ten nor more than twenty-five years. At least ten years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
 

 [4]
 

 . In its brief, the State represents that only the following portions of the 911 recording were played to the jury:
 

 CALLER: I need a[sic] officer at 1240 Tennessee Street. My ex-old man just broke into my friend's house and beat my — beat me up.
 

 OPERATOR: Okay. What's the address?
 

 CALLER: 1240 Tennessee Street. I need 'em like now cuz [sic] he’s runnin’ up the street.
 

 OPERATOR: OKAY. Wh — this your boyfriend?
 

 CALLER: My ex-boyfriend. We’ve been broke [sic] up for the past three weeks and somebody told him I was down here, so he just jumped through the window. You can
 
 *31
 
 see everything all over the floor, (unintelligible)
 

 OPERATOR: Is he black, white, or—
 

 CALLER: He’s black.
 

 OPERATOR: What’s his name?
 

 CALLER: Robert Hart, Junior.